UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA

| | |
|---|---|
| Ingrid Reeves, | ) |
|     *Plaintiffs,* | ) CIVIL ACTON NO. |
| v. | ) JURY TRIAL DEMANDED |
| C.H. Robinson Worldwide, Inc., | ) |
|     *Defendant.* | ) |

# COMPLAINT

Plaintiff Ingrid Reeves ("Ms. Reeves") for her Complaint against defendant C.H. Robinson Worldwide, Inc. ("CHRW"), alleges and states as follows:

## PROCEDURAL HISTORY

1. On October 2, 2002, a group of current and former female employees filed a complaint against CHRW alleging class-wide gender discrimination in compensation, promotions and working conditions (i.e., a hostile work environment) against all female employees in violation of Title VII in a case styled *Carlson, et al. v. C.H. Robinson Worldwide, Inc.*, Civil No. CV-02-3780 (D. Minn.).

2. On March 31, 2005, the *Carlson* Court granted in part and denied in part plaintiffs' motion for class certification. The Court narrowed plaintiffs' proposed classes for purposes of the compensation and promotion claims, certifying instead (a) a compensation class consisting of all females employed on a full-time salaried basis at any domestic CHRW branch office at any time since August 17, 2000; and, (b) a promotion class consisting of all females employed at any domestic CHRW branch office at any time since August 17, 2000, who have more than two years' experience in a sales and/or operations position.

3. The Court declined to certify plaintiffs' proposed class for purposes of the sexual harassment claim. As a result, the tolling period was terminated for Ms. Reeves to file administrative charges of discrimination with respect to her individual claim that was not subsumed within the certified class claims. Ms. Reeves subsequently filed her administrative charge of discrimination in a timely manner, received a notice of right to sue, and timely filed her claim herein.

## PARTIES

### A. Plaintiff

4. Ms. Reeves is a female resident and citizen of Birmingham, Alabama. CHRW hired her on July 2, 2001 as a sales representative and she worked in that capacity until she resigned her employment on March 26, 2004.

### B. Defendant

5. CHRW is a Delaware corporation with its principal place of business in Eden Prairie, Minnesota, and is engaged in the third-party transportation logistics industry. It employs more than 3,000 employees in the United States. CHRW maintains a nationwide branch network, including a branch office in Birmingham, Alabama, where it employed Ms. Reeves.

## JURISDICTION AND VENUE

6. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 and 1343 because this action is brought under Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e *et seq.,* as amended.

7. Venue is proper in this District pursuant to 42 U.S.C. § 2000e-5(f)(3) and 28 U.S.C. §1391 because the unlawful employment practices were committed and the employment records were maintained, in whole or in part, in this District.

**FACTS**

8. Ms. Reeves began working in the Birmingham branch on July 2, 2001 as a sales representative. During her tenure, Ms. Reeves was the only female sales transportation representative. Branch manager David Mitchell ("Mr. Mitchell") supervised Ms. Reeves during her employment.

9. Ms. Reeves also worked in an office atmosphere that was decidedly hostile to women. Foul or vulgar language such as "fuck," "bitch," and "whore" was commonplace. Male sales representative Scott Gagliardi was the most frequent offender. Ms. Reeves asked him on more than one occasion to stop using vulgar language, however he did not stop. She then complained to Mr. Mitchell about the language. He failed to take steps to stop the use of foul and vulgar language or reprimand offending employees.

10. The men listened to a sexually vulgar radio station daily. The radio station aired sexually explicit music, talk shows and commercials. Ms. Reeves heard remarks about watching pornography and masturbating with horses on the radio station. The male employees listened to a talk show where listeners called in and engaged in sexually explicit conversations about women's breasts, Playboy model's bodies and detailed erotic dreams. The radio station was a source of daily humiliation for Ms. Reeves and being forced to listen to it made it difficult for her complete her daily tasks.

11. Mr. Mitchell refused to change the radio station. In addition, he often made sexual jokes about topics covered on the station or ads. In January 2003, the station aired an ad for a non-prescription drug called Proton. The ad guaranteed that the drug would "help you please your partner, and increase your sexual performance." It stated, "You will be a sexual tyrannosaurus." In response to this ad, Mr. Mitchell, said "he's probably in a nursing home getting fired up." Ms. Reeves was demoralized by her manager's participation in this inappropriate conduct, especially because CHRW's anti-harassment policy asked that employees report such conduct to their branch manager.

12. In response to the radio station and vulgar conversations carried on by men in the branch, Ms. Reeves decided to bring her own radio to work. She hoped to drown out the vulgarities by listening to music station. Mr. Mitchell, forced Ms. Reeves to turn her radio off. He followed with an e-mail stating that the music crossover from both radios gave him a headache. Ms. Reeves responded by telling him that both the cursing in the office, and the sexual content being discussed on the other radio station, were offensive to her. Mr. Mitchell promised to turn the radio off. He did for two days. After the second day, the station was back on. On several occasions, Ms. Reeves changed the station, but another of the male employees always changed it back within a couple of hours.

13. On another occasion, when a song came on the radio about "getting some ass," Ms. Reeves left her desk and went into the hallway. When Mr. Mitchell asked her why she left the floor so abruptly, she again complained that she was tired of the vulgar conversations and the sexually explicit radio station. Mr. Mitchell merely responded that he had not heard the song.

The radio station, however, continued to play on daily and Mr. Mitchell never took action to stop the offensive conduct or reprimand offending employees.

14. Due in part to frustration with the work environment, Ms. Reeves resigned her employment with CHRW on March 26, 2004.

## COUNT I – GENDER DISCRIMINATION
## WITH RESPECT TO WORK ENVIRONMENT (SEXUAL HARASSMENT)

15. Ms. Reeves restates and realleges the allegations contained in Paragraphs 1 through 14 as though set forth here in full.

15. Ms. Reeves was subjected to unlawful harassment because of her gender by male co-workers and managers. The harassment included, but was not limited to, exposure to:

    a. pornographic material degrading to women;

    b. sexually explicit, lewd, embarrassing, provocative, derogatory and/or threatening statements, remarks and gestures; or

    c. less favorable treatment compared to their male counterparts with respect to policy enforcement, work evaluation, work assignment, training and the like.

16. The above actions, which offended plaintiff and interfered with her ability to perform her job duties, were sufficiently severe and/or pervasive to create a hostile work environment in violation of Title VII.

17. CHRW knew or should have known of the hostile work environment to which plaintiff was exposed, but failed to take reasonable action to prevent and/or stop the offensive and illegal conduct of its male employees and managers.

18. As a result, plaintiff suffered a loss of enjoyment of life, mental anguish and emotional distress, and is entitled to an award of compensatory damages.

19. CHRW committed the above-described discriminatory acts with malice and/or reckless indifference to the rights of plaintiff and, therefore, she is entitled to an award of punitive damages.

## PRAYER FOR RELIEF

WHEREFORE, plaintiffs respectfully pray that the Court: (1) declare that defendant C.H. Robinson Worldwide, Inc. violated her rights under Title VII; (2) enjoin defendant C.H. Robinson Worldwide, Inc. from further violations of Title VII; (3) award Ms. Reeves equitable relief under Title VII, including, but not limited to, back pay (including interest or an appropriate inflation factor and an enhancement to offset any adverse tax consequences associated with lump sum receipt of back pay), instatement/reinstatement and front pay; (4) award plaintiffs compensatory and punitive/liquidated damages under 42 U.S.C. § 1981a, 29 U.S.C. §216(b) and 29 U.S.C. §626; and, (5) award plaintiffs costs including, but not limited to, reasonable attorneys' fees, experts' fees, and other costs and expenses incurred to prove their claims.

# JURY DEMAND

Plaintiffs demand trial by jury on all issues triable of right by jury.

        Respectfully submitted,

        **/s/ Byron R. Perkins**
        Byron R. Perkins
        THE COCHRAN FIRM
        505 North 20th Street, Suite 825
        Birmingham, AL 35203
        (205) 244-1115
        (205) 244-1171 Fax


        **/s/ Steven M. Sprenger**
        Steven M. Sprenger (DC Bar No. 418736)*
        SPRENGER & LANG, PLLC
        1400 Eye Street, N.W., Suite 500
        Washington, D.C. 20005
        (202) 265-8010
        (202) 332-6652 Fax

        Attorneys for Plaintiff